IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL E. SCHUPPE, | ) |
|                 Plaintiff, | ) Case No. 1:18 cv 8221 |
| v. | ) Judge Ronald A. Guzman |
| HARRIS & HARRIS, LTD., | ) Magistrate Judge Sheila M. Finnegan |
|                 Defendant. | ) |

**DEFENDANT HARRIS & HARRIS, LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Defendant, Harris & Harris, Ltd., by its attorneys David M. Schultz and Louis J. Manetti Jr., in support of its Motion to Dismiss, states as follows:

**PRELIMINARY STATEMENT**

The plaintiff, Michael Schuppe, sued defendant Harris & Harris under the Telephone Consumer Protection Act ("TCPA"). He alleges that Harris & Harris was calling him at the direction of local government to collect a fine that Schuppe incurred for drug possession—Schuppe concedes this. He claims that Harris & Harris violated the statute by calling him using an automatic telephone dialing system ("ATDS") without his consent.

Schuppe's complaint fails to state a claim and should be dismissed. First, the TCPA only applies to "persons" who make calls; the village, as an Illinois municipality, is not a "person" as defined by the statute, and neither is the county that reduced the fine to a judgment. Under settled agency principles that apply to the TCPA, Harris & Harris, as a contractor acting under its authority from the local government, cannot be liable under the TCPA, either.

Second, the complaint is not well pleaded because, to state a claim for relief, Schuppe must allege sufficient facts showing that Harris & Harris used an ATDS to call him. Schuppe

only uses bare legal conclusions that mimic the language of the statute, or else claims that he heard a "pause", which does not implicate that Harris & Harris used an autodialing system as defined by the TCPA. As a result, the complaint should be dismissed.

## ALLEGATIONS

Around August 31, 2018, plaintiff Michael Schuppe claims that defendant Harris & Harris, Ltd. began calling him. (Pl. Compl., Dkt. No. 1 ¶¶ 13-14.) He alleges that Harris & Harris was calling him on behalf of the Village of Glendale Heights for a fine he incurred for drug possession. (*Id.* ¶¶ 12-13.) This fine was assessed by the Circuit Court of DuPage County when he pleaded guilty to the drug charge. (*Id.* ¶ 12.) Schuppe concedes that he owed this amount. (*Id.* ¶ 12.)

Schuppe avers that Harris & Harris called him dozens of times, until the end of 2018, when he paid the fine he owed. (*Id.* ¶ 17.)

Schuppe claims that Harris & Harris violated the TCPA because it used an ATDS to call him without his consent. (*Id.* ¶¶ 21, 25.) To show that Harris & Harris used an ATDS to call him, Schuppe alleges—aside from simply describing the system as an "ATDS"— that there was a "clear pause" and a "lack of prompt human response" before the call was connected. (*Id.* ¶¶ 15, 22, 23.)

## ARGUMENT

Schuppe's complaint fails to state a TCPA claim, and it should be dismissed. To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see*

*also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (noting that plaintiffs must plead facts which plausibly support each element of their claim).

> 1. **State and local government entities do not fall under the TCPA because they are not "persons" as the Act defines it; under agency principles, Harris & Harris can't be sued, either.**
>
>> a. *The local government entities do not fall under the purview of the TCPA because they are not a "person" as defined by the statute.*

The local government entities do not fall under the TCPA's restrictions. When federal statutes define "person" using similar lists as the one used in the TCPA, they have been held to not include municipalities or local governments. For instance, in *Abbot v. Village of Winthrop Harbor*, the Seventh Circuit had to determine whether the Federal Wiretap Act applied to municipalities. 205 F.3d 976, 980 (7th Cir. 2000). It noted that the statute defined "person" as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." *Id.* (citing § 18 U.S.C. § 2510(6)).

The Court determined that "[a]s written, the statute does not include a municipality within its definition of 'person.'" *Id.* "Absent a clearly expressed legislative intent to the contrary, *the statutory language must be regarded as conclusive*." *Id.* (emphasis added) (citing *Milwaukee Gun Club v. Schulz*, 979 F.2d 1252, 1255 (7th Cir. 1992)).

The court concluded that the village could not be sued under the statute "simply because" of the definition. *Id.*; *see also Walden v. City of Providence*, 596 F.3d 38, 54 n.29 (1st Cir. 2010) (holding that similar statutory language did not implicate municipalities); *U.S. v. Rancho Palos Verdes*, 841 F.2d 329, 330 (9th Cir. 1988) (holding that the municipal corporation defendant was not a "person" as defined by the Endangered Species Act because it did not fall under any of the enumerated types of entities that the statute listed).

3

Courts have applied these same definitional principles to TCPA liability. In *Lambert v. Seminole County School Board*, the plaintiff sued a school board under the TCPA for a series of calls it made to him about a substitute teacher who was a stranger to the plaintiff. No. 6:15 cv 78, 2016 U.S. Dist. LEXIS 128339, at *2 (Md. Dist. Fla. Jan 21, 2016). The court granted summary judgment because the defendant did not fall under the scope of the TCPA. *Id.* at *4-5. Specifically, it noted that the TCPA only applies to "any person" who makes calls within the United States, and although the TCPA does not define "person", the Communications Act—the statute the TCPA amended—did. *Id.* at *7. It defines "person" as an "individual, partnership, association, joint-stock company, trust or corporation." *Id.* at *7-8 (quoting 47 U.S.C. § 153(39)). The court determined that "[c]onspicuously absent from this definition of 'person' is any mention of governmental entities, let alone a phrase that may reasonably be construed as encapsulating a sovereign." *Id.* at *8.

The court reasoned that the TCPA's legislative history supported this reading of the statute, and that, if anything, "the TCPA's legislative history suggests that Congress was concerned only with reigning in commercial solicitation calls from telemarketers." *Id.* at *8-9 (citing H.R. Rep. no. 102-317, at 2, 5 (1991)).

FCC Rulings comparing different definitions in the Communications Act itself also support this reading of the TCPA. A final FCC order "interpreting the TCPA is binding on a district court under the Hobbs Act." *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, No. 12 C 5105, 2018 U.S. Dist. LEXIS 141471, at *7 (N.D. Ill. Aug. 21, 2018). In a 2016 Declaratory Ruling, the FCC determined that the TCPA did not apply to the federal government because it was not a "person" under the statute. 31 FCC 7394, 7401 ¶ 14 (2016). It found that this reading was supported by how Congress chose to define "person" in other parts of the

Communications Act. *Id.* Seven years before the TCPA was created, Congress enacted Title VI of the Communications Act, which "defined 'person' within that title to *include* any 'governmental entity'—an elaboration that would not be necessary if the term 'person' were ordinarily presumed to include the government." *Id.* (emphasis in original). The FCC reasoned, "Congress enacted the TCPA in 1991 against the background principle that it its use of the word 'person' in that statute would *not* be presumed to include the government." *Id.* (emphasis in original).

In this case, the municipality did not fall under the TCPA. Schuppe alleges the Village of Glendale Heights sought collection for a prior drug violation. (Pl Compl., Dkt. 1, ¶¶ 11-13.) The court file—of which this Court can take judicial notice—confirms this.[1] (Ex. A.) Glendale Heights is an Illinois municipality. *See, e.g. Terry v. Vill. of Glendale Heights*, No. 86 C 4468, 1989 U.S. Dist. LEXIS 10737, at *1 (N.D. Ill. Sept. 8, 1989) (noting that the Village is "a municipal corporation located in western DuPage county[.]"). The language in *Abbott* that the Seventh Circuit held did not implicate municipalities—an individual, partnership, association, joint stock company, trust or corporation—is identical to the definition of "person" in the TCPA. *Compare Abbott*, 205 F.3d at 980, *with* 47 U.S.C. § 153(39). Indeed, the language in the TCPA is less encompassing than the language in *Abbott*: the TCPA does not purport to apply to officers or agents of States or political subdivisions—much less the political subdivisions themselves. As

---

[1] *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quoting *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)) (internal quotation marks omitted) (noting that "the district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment."); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5106, at 505 (1st ed. 1977 & Supp. 1997)) (stating that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records.").

written, the definition does not include municipalities. Thus, the Village of Glendale Heights did not fall under the TCPA by its own definitions, and could not have been sued under the statute.

Additionally, the Village of Glendale Heights falls outside the TCPA's reach because, as a type of sovereign, the statute must affirmatively show that it belongs in the definition of "person." The Supreme Court has described a "longstanding interpretive presumption" that "the word 'person' does not include the sovereign[,]" which may be disregarded "only upon some affirmative showing of statutory intent to the contrary." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780-01 (2000) (citing *U.S. v. Cooper Corp.*, 312 U.S. 600, 604 (1941)).

Under the Illinois Constitution, municipalities have certain powers of a sovereign. In Illinois, home rule units—municipalities that have a population more than 25,000—"have the same powers as the sovereign, except where such powers are limited by the General Assembly." *City of Chi. v. Roman*, 184 Ill. 2d 504, 513 (1998) (quoting *Triple A Servs. v. Rice*, 131 Ill. 2d 217, 230 (1989)); *see also McLorn v. East St. Louis*, 105 Ill. App. 3d 148, 153 (5th Dist. 1982) (noting that "the scope of authority granted to home rule units under [the Illinois Constitution] is generally coextensive with that of the sovereign, except where such powers are limited expressly by the General Assembly.").

The Village of Glendale Heights is a home rule unit.[2] Thus, it has certain powers coextensive with a sovereign under the Illinois Constitution, and by analogy of longstanding statutory interpretation, a statute cannot be presumed to apply to it absent some "affirmative

---

[2] The population of Glendale Heights as of 2010 was 34,208. U.S. Census Bureau, https://www.census.gov/quickfacts/glendaleheightsvillageillinois (last accessed February 5, 2019). This Court may take judicial notice of matters of public record, such as census data, when deciding a motion to dismiss. *Wilson v. City of Eureka*, No. 11 cv 1433, 2013 U.S. Dist. LEXIS 13282, at *11 (C.D. Ill. Jan. 11, 2013).

showing" to the contrary. Simply put, there is nothing in the text of the TCPA that indicates it applies to municipalities.

Alternatively, Schuppe's claim would not fare any better if he claimed that he owed the fine to DuPage County. Cases with definitions of "person" similar to *Abbott* and to the TCPA similarly find that counties are not included. Indeed, in *Abbott*, the Seventh Circuit concluded that the definition of "person", "unequivocally excludes *local government entities* from tis definition[.]" *Abbott*, 205 F.3d at 980 (emphasis added). Further, in *County of Santa Clara v. Astra United States, Inc.*, the county sued pharmaceutical companies under an unfair competition law for overcharging hospitals for drugs. 428 F. Supp. 2d 1029, 1031 (N.D. Cal. 2006). The statute defined "person" as, "natural persons, corporations, firms, partnerships, joint stock companies, associations, and other organizations of persons." *Id.* at 1032-33. The court held that the county lacked standing to sue because it was not a "person" as the statute defined it. *Id.* at 1035. Specifically, "because [the statute] does not expressly include counties it is a strong indication that the Legislature did not intend counties to be subject to the statutes in question." *Id.* (brackets omitted) (quoting *Cmty. Mem'l Hosp. of San Buena Ventura v. Cnty. of Ventura*, 50 Cal. App. 4th 199, 209 (Cal. Ct. App. 1996)); *see also Cnty. of Santa Clara v. GSK*, No. 10-1637, 2011 U.S. Dist. LEXIS 124458, at *12 n.33 (E.D. Pa. Oct. 26, 2011) (in a case where a county sued under a false advertising law that defined "person" as "any individual, partnership, firm, association, or corporation", the county lacked standing to sue on its own behalf because the statute "does not expressly provide for suits by a county[.]").

Schuppe mentions DuPage County as the entity that assessed the fine after Schuppe entered a guilty plea in court. (Pl. Compl., Dkt. No. 1 ¶ 12.) But ultimately, there is no functional difference between the municipality and the county's role in this case because the county is also

not a "person" as defined by the TCPA. At bottom, the TCPA's definition of "person" does not hint that it reaches *any* state or political subdivision. Thus, Schuppe cannot salvage his claim by mentioning a separate role that DuPage County played in levying the fine.

In sum, local governments and other political subdivisions are not "persons" under the TCPA. Neither the village nor the county can be liable under the TCPA. And under settled agency principles that apply to the statute, Harris & Harris cannot be liable under the Act, either.

> b. *Under agency principles that are routinely applied to the TCPA, Harris & Harris cannot be liable under the statute for its actions on behalf of the government.*

Under settled agency principles, because the local government entities do not fall under the TCPA, Harris & Harris cannot be liable under the Act as the government's authorized contractor. The FCC, having ruled that the federal government did not fall under the TCPA because it was not a "person" as defined by the statute,[3] further determined that the term "person" does not include a contractor when acting on behalf of the government. 31 FCC Rcd. 7394, 7401 ¶ 16 (2016). Specifically, the TCPA incorporates federal common law notions of agency. *Id.* at 7402 ¶ 16. The FCC has applied these principles to support doctrines such as vicarious liability, but "the Commission has repeatedly applied agency principles in the other direction—allowing a third party calling on behalf of a principal to invoke a privilege or exemption belonging to the principal." *Id.*; *see also Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17 cv 587, 2018 U.S. Dist. LEXIS 138785, at *12 (S.D. Ohio Aug. 16, 2018) (noting that "[t]he

---

[3] In its Ruling, the FCC did not address whether calls made by or on behalf of state or local governments are subject to the TCPA. 31 FCC Rcd. 7394, 7397 n.32 (2016). Although the issue remains open for the FCC to rule on in the future, the FCC's reasoning about why the federal government and duly authorized contractors fall outside the TCPA applies equally to local governments and their authorized contractors. Indeed, in a statement accompanying the ruling, Commissioner O'Rielly criticized the decision for not going as far as to apply to state and local governments, because "[t]he same justifications used in the Declaratory Ruling to exempt federal government calls would apply to state and local government calls." *Id.* at 7415.

8

FCC's approach is consistent with that of federal courts, which have looked to agency principles in applying the TCPA to questions of vicarious liability and consent.").

In its Ruling, the FCC determined that it "made sense" to apply those principles to instances of third-party contractors operating on behalf of the government. *Id.* The Commission pointed out that if "the TCPA applied to contractors calling on behalf of the federal government, this rule would potentially allow the government to be held *vicariously* liable for conduct in which the TCPA *allows* the government to engage. That would be an untenable result." *Id.* (emphasis in original). Put another way, the FCC's finding that the government is not a "person" under the TCPA would not be "meaningful" if government contractors were excluded from this result. *Id.* n.79. It concluded that the government-contractor scenario was simply one "where the caller would violate the TCPA if calling on its own behalf, but is exempt from liability because it is calling on behalf of a principal and the principal would not be liable if it had placed the calls itself." *Id.* at 7403 ¶ 17.

Ultimately, the FCC's decision about government contractors fits squarely within its settled determination that "[c]alls placed by a third-party [debt] collector on behalf of that creditor are treated as if the creditor itself placed the call." 28 FCC Rcd. 6574, 6589 ¶ 38 (2013) (23 FCC Rcd. 559, 564-65)); *see also* 31 FCC Rcd. 7402 ¶ 17 n.79 (citing Restatement (Third) of Agency § 7.01 cmt. e (2006)) ("This follows from the agency-law rule that when a principal is privileged to take some action, an agent may typically exercise that privilege on the principal's behalf."). And again, a final FCC order "interpreting the TCPA is binding on a district court under the Hobbs Act." *Physicians Healthsource, Inc.*, 2018 U.S. Dist. LEXIS 141471 at *7.

Supreme Court precedent about principles of agency applying to the TCPA supports this position. In *Campbell-Ewald Co. v. Gomez*, the Supreme Court recognized that government

contractors can obtain certain immunities in connection with the work they do pursuant to their dealings with the United States. 136 S. Ct. 663, 672 (2016). And although that case analyzed derivative sovereign immunity—not common law agency principles—the FCC explained that the Supreme Court's analysis supported its reading that the term "person" did not include government contractors, either. 31 FCC Rcd. at 7405 ¶ 21.

Finally, as the FCC noted in its *Broadnet* declaratory ruling, there are practical reasons for allowing a government contractor to partake in the same activities as the government without fear of being liable for claims that the government would be free from. As it noted, governments "generally lack the capacity and expertise to conduct large-scale telecommunications operations using their own facilities[,]" and they are "not often experienced at operating call centers. Instead, to efficiently conduct these activities, the government usually must act through third-party contractors." 31 FCC Rcd. at 7403 ¶ 19.

As explained, above, neither local government entity meets the definition of "person" under the TCPA. And Schuppe alleges in his complaint that Harris & Harris was acting on behalf of the village—that it "enlisted [Harris & Harris] to collect this fine." (Pl. Comp., Dkt. No. 1 ¶ 13.) Federal common law agency principles apply to the TCPA, including the notion that a third party calling on behalf of a principal acts under the same privileges or exemptions belonging to the principal. Neither Glendale Heights nor DuPage County could be sued under the TCPA for calling Schuppe, and under these well-settled principles, Harris & Harris cannot be sued for engaging in the same action on the government's behalf. As a result, Schuppe has failed to state a claim on which relief can be granted.

### 2. Schuppe does not state a viable claim under the TCPA because he fails to allege that the dialing equipment could dial randomly or sequentially.

The complaint does not state a claim because he fails to show that Harris & Harris contacted Schuppe using an Automatic Telephone Dialing System as defined by the TCPA. Schuppe merely concludes that: (1) Harris & Harris used an "ATDS" to call him; and (2) that there was a "pause" before the line was connected—both fail to sufficiently plead a TCPA claim.

Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. *Id.* (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit took *Iqbal* to be "admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

For example, in *Hanley v. Green Tree Servicing, LLC*, the plaintiff brought a lawsuit under the TCPA. 934 F. Supp. 2d 977, 979 (N.D. Ill. 2013). He alleged that the defendant called his phone "using an automatic telephone dialing systems and/or an artificial or prerecorded voice." *Id.* (internal brackets omitted). The Court dismissed the complaint. *Id.* at 985. It reasoned that, in light of pleading standards, complaining that the defendant had called the plaintiff's cell phone on "multiple occasions over the past four years" using "an [ATDS] and/or artificial or prerecorded voice", "pleads only three factual allegations, one of which is not actually a fact at all but rather a legal conclusion and thus not entitled to the assumption of truth." *Id.* at 983.

11

The Court later reiterated that the complaint was "highly suspect because it merely recites naked facts mimicking the elements of a cause of action under the TCPA." *Id.*; *see also Ananthapadmanabhan v. BSI Fin. Servs.*, No. 15 C 5412, 2015 U.S. Dist. LEXIS 167649, at *10 (N.D. Ill. Dec. 2015) (in a TCPA case discussing the use of an ATDS, noting that when "a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting facts."). The Court's wariness of broadly-pleaded TCPA complaints is particularly salient given the recent narrowing of what constitutes an ATDS. *See, e.g., ACA Int'l v. FCC*, 885 F.3d 687, 697 (D.C. Cir. 2018) (setting aside the FCC's prior declarations about what constitutes an ATDS because the rulings led to anomalous outcomes and because they were "bottomed in an unreasonable, and impermissible, interpretation of the statute's reach."); *see also Dominguez*, 894 F.3d at 120 (adopting the narrowed view of what constitutes an ATDS); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) (same).

Schuppe's complaint mostly mimics statutory language that Harris & Harris used an "automatic telephone dialing system" or "ATDS" to call him. (Pl. Compl., Dkt. No. 1 ¶¶ 21, 22, 23. These are precisely the types of allegations the *Hanley* decision found insufficient, and according to the Seventh Circuit, Schuppe must provide *some* specific facts to ground his legal claims—he has not.

Schuppe's remaining allegations are thin and fail show that Harris & Harris used an ATDS. Schuppe must allege sufficient factual detail to infer that Harris & Harris used an autodialer to call him, consistent with the D.C. Circuit's determination in *ACA International* that the FCC's previous expansive interpretation of what constitutes an ATDS was incorrect. As a court in this district reasoned, in the wake of *ACA International*, "[t]he FCC's pre-2003 understanding of § 227(a)(1) thus reinforces what its plain text shows—that equipment qualifies

12

as an ATDS only if it has the capacity to 'function . . . by generating random or sequential telephone numbers and dialing those numbers.'" *Pinkus v. Sirius XM Radio, Inc.*, No. 16 C 10858, 2018 U.S. Dist. LEXIS 125043, at *30-31 (N.D. Ill. July 26, 2018) (quoting *Dominguez*, 894 F.3d at 121).

In *Pinkus*, the court engaged in a lengthy grammatical analysis and concluded that "the phrase 'using a random or sequential number generator' necessarily conveys that an ATDS must have the capacity to generate telephone numbers, either randomly or sequentially, and then to dial those numbers." *Id.* at *29-30; *see also Dominguez*, 894 F.3d at 120 (finding the plaintiff's argument about the dialing system inadequate because notably absent was "any explanation of how the Email SMS System actually did or could generate random telephone numbers to dial."); *Keyes v. Ocwen Loan Servicing, LLC*, No. 17 cv 11492, 2018 U.S. Dist. LEXIS 138445, at *21 (E.D. Mich. Aug. 16, 2018) (holding that the better reading of the TCPA "is that devices must be able to generate random or sequential numbers to be dialed to qualify as an ATDS[,]" because this tracks the language of the statute, and "[p]ut another way, simply calling from a set list is not enough for equipment to constitute an autodialer.").

As the *Pinkus* court recognized, the capacity to generate numbers randomly or sequentially and then to dial them is the "defining characteristic of an ATDS[,]" and a plaintiff's claim will be defeated if the plaintiff "*does not plausibly allege* that he was called with a device that has the capacity to store or produce numbers that have been randomly or sequentially generated." *Pinkus*, 2018 U.S. Dist. LEXIS 125043 at *32 (emphasis added); *see also Gary v. TrueBlue, Inc.*, No. 17 cv 10544, 2018 U.S. Dist. LEXIS 128782, at *19-20 (E.D. Mich. Aug. 1, 2018) (reasoning that "[p]laintiff does not allege that [the dialing system] has the capacity to store or produce numbers using a number generator", and that, adhering to the plain language of

13

the TCPA, the court held that the dialing system "does not qualify as an ATDS as a matter of law.").

The only characteristic Schuppe uses to describe his calls with Harris & Harris does not indicate that Harris & Harris used *any* particular type of dialer to contact him—let alone one that could randomly or sequentially generate numbers and then dial them. The only detail Schuppe gives about the calls is that there was a "clear pause" (Pl. Comp., Dkt. No. 1 ¶¶ 15, 23) or a "lack of prompt human response" (*id.* ¶ 22) before he was connected to a representative. But any number of systems could result in the called party experiencing a pause before being connected. In fact, Plaintiff's counsel has ascribed that very attribute to a predictive dialing system. *See, e.g. Gilbert v. Harris & Harris, Ltd.*, 1:18 cv 4915, Dkt. No. 1 ¶¶ 26, 29 (alleging that the defendant used a "predictive dialing system" to contact the plaintiff because there was a "lack of prompt human response" and a "pause" before being connected). But, as courts have recognized, the "principal feature of predictive dialing software is a timing function, not number storage or generation." *Pinkus*, 2018 U.S. Dist. LEXIS 125043 at *20 (bracket omitted) (quoting 2003 Order, 18 FCC Rcd. at 14091 ¶ 131). Indeed, to the extent that a pause and a lack of prompt human response describes *both* predictive dialers and ATDSs, Schuppe has failed to differentiate between multiple types of systems—some that fall under the statutory definition of ATDS, and some that don't. At bottom, Schuppe fails to allege anything about the nature of the calls themselves indicating that Harris & Harris used an automatic dialer as defined by the TCPA.

Also, the fact that Schuppe alleges that Harris & Harris was intentionally trying to reach him about a debt he admits he owed undercuts the conclusion that Harris & Harris used an autodialer. *See, e.g., Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1027 (N.D. Cal. 2017) (stating that where the content of a message suggests that "the defendant directly targeted a

particular individual, that content weighs against an inference that the defendant used an ATDS."); *Smith v. Aitima Med. Equip., Inc.*, No. 16-339, 2016 U.S. Dist. LEXIS 113671, at *19 (C.D. Cal. July 29, 2016) ("These complaints suggest that the caller was targeting certain individuals . . . . [t]hus, these allegations go against an inference that an ATDS was used[.]"). In this case, Schuppe alleges that Harris & Harris was deliberately calling him to collect a debt that he admits he owed. (Dkt. No. 1 ¶¶ 11-13.) This undermines the notion that Harris & Harris was using equipment that randomly or sequentially generated numbers and then dialed them to reach Schuppe.

In sum, Schuppe does not articulate anything about the calls to infer that the system was an autodialer under the TCPA beyond legal conclusions and descriptions of "pauses" that do not implicate that Harris & Harris used an ATDS.

WHEREFORE, Defendant, Harris & Harris, Ltd., prays that this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint and/or enter any other relief that is equitable and just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ Louis J. Manetti, Jr.
Louis J. Manetti, Jr.

David M. Schultz
Louis J. Manetti, Jr.
Hinshaw & Culbertson LLP
151 North Franklin St.
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
lmanetti@hinshawlaw.com

15

303187530v1 1016367

## **CERTIFICATE OF SERVICE**

I certify that on February 12, 2019, that I caused to be filed a copy of Defendant's Memorandum in Support of its Motion to Dismiss which will be sent to all Counsel of Record via the Court's electronic filing system.

                HINSHAW & CULBERTSON LLP

By: *s/ Louis J. Manetti, Jr.*
      Louis J. Manetti, Jr.